## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

DANIEL GOMBASH,
on behalf of himself, FLSA Collective
Plaintiffs, and the Class,

v.

WE EAT HOSPITALITY GROUP, LTD.,
STATE & 9 CORPORATION, D/B/A
BULLDOG ALE HOUSE, AURORA BULL
DOG COMPANY, D/B/A  BULLDOG ALE
HOUSE, 459 RANDALL CROSSINGS
COMPANY, D/B/A BULLDOG ALE HOUSE,
6610 SHERIDAN CORPORATION, D/B/A
BULLDOG ALE HOUSE, ROOSEVELT 100
CORPORATION, D/B/A BULLDOG ALE
HOUSE, 2628 RT 59 COMPANY, D/B/A
BURNT PIZZA COMPANY, 451 COMMONS
COMPANY, D/B/A BULLDOG ALE HOUSE,
1480 GOLF CORPORATION, D/B/A
BULLDOG ALE HOUSE,YORKTOWN
TOASTMASTER CORPORATION, D/B/A
HONEY BERRY CAFÉ, ROSELLE LLA, INC.,
D/B/A BULLDOG ALE HOUSE,BULL DOG
ALE HOUSE, INC., D/B/A BULLDOG ALE
HOUSE, MCHENRY 31 COMPANY, D/B/A
BULLDOG ALE HOUSE,ALGONQUIN
COMMONS COMPANY, D/B/A BULLDOG
ALE HOUSE, AND 157 WEBER COMPANY,
D/B/A BULLDOG ALE HOUSE, AND JOHN
DOE CORPORATIONS 1-100,

                              Defendants.

Case No.:

Judge:

**CLASS AND COLLECTIVE
ACTION COMPLAINT**

**Jury Trial Demanded**

## COMPLAINT

NOW COMES the Plaintiff, DANIEL GOMBASH ("Plaintiff") by and through his attorneys, HR LAW COUNSEL, LLC, and as and for its Complaint against WE EAT HOSPITALITY GROUP, LTD., STATE & 9 CORPORATION, D/B/A BULLDOG ALE HOUSE, AURORA BULL DOG COMPANY, D/B/A BULLDOG ALE HOUSE, 459 RANDALL CROSSINGS COMPANY, D/B/A BULLDOG ALE HOUSE, 6610 SHERIDAN CORPORATION, D/B/A BULLDOG ALE HOUSE, ROOSEVELT 100 CORPORATION, D/B/A BULLDOG ALE HOUSE, 2628 RT 59 COMPANY, D/B/A BURNT PIZZA COMPANY, 451 COMMONS COMPANY, D/B/A BULLDOG ALE HOUSE, 1480 GOLF CORPORATION, D/B/A BULLDOG ALE HOUSE, YORKTOWN TOASTMASTER CORPORATION, D/B/A HONEY BERRY CAFÉ, ROSELLE LLA, INC., D/B/A BULLDOG ALE HOUSE, BULL DOG ALE HOUSE, INC., D/B/A BULLDOG ALE HOUSE, MCHENRY 31 COMPANY, D/B/A BULLDOG ALE HOUSE, ALGONQUIN COMMONS COMPANY, D/B/A BULLDOG ALE HOUSE, AND 157 WEBER COMPANY, D/B/A BULLDOG ALE HOUSE, and JOHN DOE CORPORATIONS 1-100 (collectively "Defendants") states as follows:

## INTRODUCTION

1. Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 et. seq. ("FLSA"), that he and FLSA Collective Plaintiffs are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to time shaving; (2) illegally retained gratuities; (3) liquidated damages; and (4) attorneys' fees and costs.

2. Plaintiff alleges that, pursuant to the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115 and the Illinois Minimum Wage Law, 820 ILCS 105/1 et seq. ("IMWL"), he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including minimum wages and overtime, due to an invalid tip credit; (2) unpaid wages, including overtime, due

to time shaving; (3) reimbursement for uniforms; (4) illegally retained gratuities; (5) statutory penalties;

(6) liquidated damages; and (7) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over Plaintiffs'' FLSA claims pursuant to 28 U.S.C.

§1331, arising under 29 U.S.C. § 216(b). This Court has supplemental jurisdiction over Plaintiffs''

state law claims pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in the Northern District pursuant to 28 U.S.C. § 1391.

## THE PARTIES

5.      Plaintiff GOMBASH is a resident of DuPage County, Illinois.

6.      Defendants jointly operate a family of restaurants throughout the Chicago, Illinois

area. *See* Exhibit A – We Eat Hospitality Group Restaurants in the Chicagoland area.  The We Eat

Hospitality Group Restaurants in the Chicagoland area are located at:

      a.   Bulldog Ale House: 1520 S Randall Rd, Algonquin, IL 60102;

      b.   Bulldog Ale House: 451 N. Commons Dr, Aurora, IL 60504;

      c.   Bulldog Ale House: 157 S. Weber Road, Bolingbrook, IL 60490;

      d.   Bulldog Ale House: 1021 Fountain View Dr., Carol Stream, IL 60188;

      e.   Bulldog Ale House: 3325 Ridge Rd, Lansing, IL 60438;

      f.   Bulldog Ale House: 1501 State Rte. 31, McHenry, IL 60050;

      g.   Bulldog Ale House: 2387 E. Joliet Hwy, New Lenox, IL 60451;

      h.   Bulldog Ale House: 459 S Randall Road, North Aurora, IL 60542;

      i.   Bulldog Ale House: 6606 N. Sheridan, Chicago, IL 60626;

      j.   Bulldog Ale House: 1480 Golf Road, Rolling Meadows, IL 60008;

      k.   Honey Berry Pancakes and Cafe: 2708 N. Sutton, Hoffman Estates, IL 60192;

      l.   Honey Berry Pancakes and Cafe: 203 Yorktown Shopping Center, Lombard, IL

60148;

m.  Honey Berry Pancakes and Cafe: 394 East Irving Park Rd., Roselle, IL 60172;

n.  Honey Berry Pancakes and Cafe: 322 Randall Road, South Elgin, Illinois 60177;

o.  Honey Berry Pancakes and Cafe: 901 S. State St., Chicago, IL 60605;

p.  Honey Berry Pancakes and Cafe: 28361 Diehl Road, Warrenville, IL 60555; and

q.  Goat & Vine Winery, 195 Remington Blvd., Bolingbrook, IL 60440. (collectively the "Restaurants").

7.  All the Restaurants are operated as a single enterprise, under the common control of the Defendants. Specially, the Restaurants are engaged in related activities, share common ownership, and have a common business purpose:

a.  The Restaurants are advertised jointly as a common enterprise on Defendants' website located at https://www.weeathospitalitygroup.com/about-us.php. *See* Exhibit A.

b.  As stated on its website: "WeEat Hospitality Group establishes and operates a family of restaurants that offer a delicious and memorable experience. The WeEat Hospitality Group provides superior business management and assistance through consultation and training in the areas of service, hospitality, culinary creations and development, finance and accounting, human resources, etc. The WeEat Hospitality Group also promotes and markets a program that rewards customers for their loyalty in supporting its family of restaurants." *See* Ex. A *https://www.weeathospitalitygroup.com/about-us.php*.

c.  The Restaurants share a common loyalty program which can be joined at https://loyalty.focuspos.com/addmember/?C=845. *See* Exhibit A – We Eat Loyalty Program.

4

    d.   The Restaurants share a common recruiting team that hires for all locations and brands (GOAT & VINE WINERY, BULLDOG ALE HOUSE, and HONEY BERRY PANCAKES AND CAFÉ). *See https://www.indeed.com/cmp/We-Eat-Hospitality-Group/jobs* and Exhibit A– We Eat job, recruiting and career listings.

8.       Defendant WE EAT HOSPITALITY GROUP is a domestic corporation with a principal place of business and a service of process address located at 1006 S LOCUST AVE, FREEPORT, ILLINOIS 61032-5408. Its President is MEFMET AHMETI who resides at 1524 MARION SCHAUMBURG 60193.

9.       STATE & 9 CORPORATION, D/B/A BULLDOG ALE HOUSE is a domestic corporation with a principal place of business in Chicago, Illinois and a service of process address located at 1006 S LOCUST AVE, FREEPORT, ILLINOIS 61032-5408. Its President is KUJTIME AHMETI who resides at 1524 MARION SCHAUMBURG 60193.

10.     AURORA BULL DOG COMPANY, d/b/a BULLDOG ALE HOUSE is a domestic corporation with a principal place of business in Aurora, Illinois and a service of process address located at 1006 S LOCUST AVE, FREEPORT, ILLINOIS 61032-5408. Its Secretary is KUJTIME AHMETI who resides at 1524 MARION SCHAUMBURG 60193 and its President is FEKRIJE LIMANI who resides at 1233 CONCORD DR ELGIN IL 60120.

11.     459 RANDALL CROSSINGS COMPANY, d/b/a BULLDOG ALE HOUSE is a domestic corporation with a principal place of business in North Aurora, IL and a service of process address located at 1006 S LOCUST AVE, FREEPORT, ILLINOIS 61032-5408. Its President is KUJTIME AHMETI who resides at 1524 MARION SCHAUMBURG 60193.

12.     6610 SHERIDAN CORPORATION, d/b/a BULLDOG ALE HOUSE is a domestic corporation with a principal place of business in Chicago, IL and a service of process address located

at 1006 S LOCUST AVE, FREEPORT, ILLINOIS 61032-5408.  Its President is KUJTIME AHMETI who resides at 1524 MARION SCHAUMBURG 60193.

13.    ROOSEVELT 100 CORPORATION, d/b/a BULLDOG ALE HOUSE is a domestic corporation with a principal place of business and a service of process address located at 1006 S LOCUST AVE, FREEPORT, ILLINOIS 61032-5408.  Its President is MEFMET AHMETI who resides at 1524 MARION SCHAUMBURG 60193.

14.    2628 RT 59 COMPANY, d/b/a BURNT PIZZA COMPANY is a domestic corporation with a principal place of business and a service of process address located at 1006 S LOCUST AVE, FREEPORT, ILLINOIS 61032-5408.  Its President is MEFMET AHMETI who resides at 1524 MARION SCHAUMBURG 60193.

15.    451 COMMONS COMPANY, d/b/a BULLDOG ALE HOUSE is a domestic corporation with a principal place of business in Aurora, IL and a service of process address located at 1006 S LOCUST AVE, FREEPORT, ILLINOIS 61032-5408. Its President is MEFMET AHMETI who resides at 1524 MARION SCHAUMBURG 60193.

16.    1480 GOLF CORPORATION, d/b/a BULLDOG ALE HOUSE is a domestic corporation with a principal place of business in Rolling Meadows, IL and a service of process address located at 1006 S LOCUST AVE, FREEPORT, ILLINOIS 61032-5408.  Its President is KUJTIME AHMETI who resides at 1524 MARION SCHAUMBURG 60193.

17.    YORKTOWN TOASTMASTER CORPORATION, d/b/a HONEY BERRY CAFÉ is a domestic corporation with a principal place of business in Lombard, IL and a service of process address located at 1006 S LOCUST AVE, FREEPORT, ILLINOIS 61032-5408.  Its President is MEFMET AHMETI who resides at 1524 MARION SCHAUMBURG 60193.

18.    ROSELLE LLA, INC., d/b/a BULLDOG ALE HOUSE and HONEY BERRY PANCAKES & CAFÉ, is a domestic corporation with a principal place of business in Roselle, IL and

a service of process address located at 1006 S LOCUST AVE, FREEPORT, ILLINOIS 61032-5408. Its President is MEFMET AHMETI who resides at 1524 MARION SCHAUMBURG 60193.

19.　BULL DOG ALE HOUSE, INC., d/b/a BULLDOG ALE HOUSE is a domestic corporation with a principal place of business and a service of process address located at 1006 S LOCUST AVE, FREEPORT, ILLINOIS 61032-5408. Its President is MEFMET AHMETI and its Secretary is KUJTIME AHMETI who both reside at 1524 MARION SCHAUMBURG 60193.

20.　MCHENRY 31 COMPANY, d/b/a BULLDOG ALE HOUSE is a domestic corporation with a principal place of business in McHenry, IL and a service of process address located at 1006 S LOCUST AVE, FREEPORT, ILLINOIS 61032-5408. Its President is MEFMET AHMETI and its Secretary is KUJTIME AHMETI who both reside at 1524 MARION SCHAUMBURG 60193.

21.　ALGONQUIN COMMONS COMPANY, d/b/a BULLDOG ALE HOUSE is a domestic corporation with a principal place of business in Algonquin, IL and a service of process address located at 1006 S LOCUST AVE, FREEPORT, ILLINOIS 61032-5408. Its President is MEFMET AHMETI who resides at 1524 MARION SCHAUMBURG 60193.

22.　157 WEBER COMPANY, d/b/a BULLDOG ALE HOUSE is a domestic corporation with a principal place of business in Bolingbrook, IL and a service of process address located at 1006 S LOCUST AVE, FREEPORT, ILLINOIS 61032-5408. Its President is MEFMET AHMETI who resides at 1524 MARION SCHAUMBURG 60193.

23.　Upon information and belief, Defendants JOHN DOE CORPORATIONS 1-100 are individual unknown corporations operating Restaurants throughout the Chicagoland area. JOHN DOE CORPORATIONS 1-100 share common control with Defendant WE EAT HOSPITALITY GROUP, LTD. Defendant WE EAT HOSPITALITY GROUP, LTD exercises control over the employment terms and conditions of those working for Defendants JOHN DOE CORPORATIONS 1-100. Defendant WE EAT HOSPITALITY GROUP, LTD has and exercises the power and authority to

7

determine the rate and method of pay, determine work schedules, maintain employment records, and otherwise affect the quality of employment of employees of JOHN DOE CORPORATIONS 1-100. Defendant WE EAT HOSPITALITY GROUP, LTD exercises functional control over the business and financial operations of all JOHN DOE CORPORATIONS.

24.     At all relevant times, the Corporate Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA.

25.     At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs and Class members was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

26.     Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees, including but not limited to front desk agents, engineers, housekeepers, bellman, porters, bartenders, and servers among others, employed by Defendants throughout Chicago, Illinois in hotels owned and operated by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

27.     At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their proper wages, including overtime, due to time shaving. Defendants also failed to reimburse Plaintiff for uniforms he was forced to purchase. A subclass of tipped employees has a claim for illegally retained gratuities. The claims of Plaintiff stated herein are essentially the same as those of other FLSA Collective Plaintiffs.

8

28. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## CLASS ACTION ALLEGATIONS

29. Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees, including but not limited to hosts, kitchen staff, busboys, servers, and bartenders among others, employed by Defendants throughout the Chicagoland area in restaurants owned and operated by Defendants on or after the date that is five years before the filing of the Complaint (the "Class Period").

30. All said persons, including Plaintiff, are referred to herein as the "Class." The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

31. The proposed Class is so numerous such that a joinder of all Members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) Members of the Class. The Class further includes a subclass of tipped employees ("Tipped Subclass")

who also number more than forty (40). Plaintiff GOMBASH is a member of both the Class and the Tipped Subclass.

32.     Plaintiff's claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All Class Members were subject to the same corporate practices of Defendants, as alleged herein, of (i) unpaid wages, including minimum wages and overtime, due to an invalid tip credit; (ii) unpaid wages, including overtime, due to time shaving; (iii) reimbursement for uniforms; (iv) illegally retained gratuities; (v) failing to provide Class Members with proper wage statements with every payment of wages; and (vi) failing to properly provide wage notices to Class Members, at date of hiring and dates of all wage changes, per requirements of IWPCA.

33.     Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures.

34.     More specifically, with regard to Plaintiff and the Tipped Subclass, Defendants also failed to pay them the proper minimum wage and overtime because Defendants were not entitled to claim any tip credit because they failed to meet statutory requirements under IWPCA. Plaintiff and the Tipped Subclass suffered from Defendants' failure to pay minimum wage and their proper overtime due to Defendants' invalid tip credit allowance because Defendants (i) failed to properly provide tip credit notice at hiring and annually thereafter; (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding twenty (20%) of the total hours worked each workweek; (iii) illegally retained tips; (iv) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period; (v) failed to accurately keep track of

daily tips earned and maintain records thereof; and (vi) incorrectly applied tip credits to overtime hours paid.

35. Defendants' policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures.

36. Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs and defendants in wage and hour cases.

37. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible

standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

38.     Defendants and other employers throughout the state violate the IWPCA. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

39.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

      a.  Whether Defendants employed Plaintiff and the Class Members within the meaning of the IWPCA;

      b.  What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and the Class Members properly;

      c.  At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and the Class Members for their work;

      d.  Whether Defendant properly notified Plaintiff and the Class Members of their hourly rates and overtime rates;

      e.  Whether Defendants properly compensated Plaintiff and Class Members the proper minimum wage under IWPCA;

12

f. Whether Defendants properly compensated Plaintiff and Class Members the proper overtime compensation at one-and-one-half times their straight time base hourly rates for all hours worked in excess of forty (40) each workweek under IWPCA;

g. Whether Defendants properly provided notice to all tipped employees that Defendants were taking a tip credit;

h. Whether Defendants accurately tracked the amount of tips earned each day and maintained records thereof;

i. Whether Defendants caused tipped employees to engage in non-tipped duties exceeding two (2) hours or twenty percent (20%) of each shift;

j. Whether Defendants provided proper wage statements informing (i) tipped employees of the amount of tip credit taken for each payment period, and (ii) all non-exempt employees of information required to be provided on wage statements under IWPCA;

k. Whether Defendants paid Plaintiff and Class Members for all hours worked given Defendants' policy of time shaving;

l. Whether Defendants reimbursed Plaintiff and Class Members for their uniforms;

m. Whether Defendants retained any portion of the gratuities from their tipped employees;

n. Whether Defendants provided wage and hour notices to Plaintiff and the Class Members at date of hiring, as required under IWPCA;

o. Whether Defendants provided proper wage and hour statements to Plaintiff and the Class Members, as required under IWPCA; and

p. Whether Defendants applied the correct tip credit amount to overtime hour paid.

**STATEMENT OF FACTS**

40.    Plaintiff GOMBASH worked at Bulldog Ale House located at 451 N. Commons Dr, Aurora, IL 60504 from in or around November 2021 to in or around June 26, 2022, as a bartender and a server.

41.    During his employment, Plaintiff GOMBASH worked thirty-five (35) to fifty-two (52) hours per week. FLSA Collective Plaintiffs, and Class Members were scheduled to work a similar number of hours per week.

42.    Throughout his entire employment with Defendants, Plaintiff GOMBASH was paid seven dollars and twenty cents ($7.20) per hour and tips. Plaintiff GOMBASH was not paid at the proper overtime rate. Plaintiff GOMBASH was paid at an overtime rate of ten dollars and eighty cents ($10.80) per hour reflecting one and half times his paid rate.  Based on the tip credit Plaintiff GOMBASH should have been paid overtime at one and a half times the actual minimum wage minus any applicable credit or allowance. At all times, Plaintiff GOMABSH was paid bi-weekly checks. FLSA Collective Plaintiffs, and Class Members were paid similar rates and incorrect overtime rates by bi-weekly checks.

43.    At all relevant times, Plaintiff GOMBASH, FLSA Collective Plaintiffs, and Class Members regularly worked over forty (40) hours per week, but Defendants failed to pay them the proper overtime premium rate of one-and-half times of their regular hourly rate for each hour exceeding forty (40) hours per workweek in violation of the FLSA and IWPCA.

44.    Plaintiff, a subclass of FLSA Collective Plaintiffs, and the Tipped Subclass were paid below the minimum wage and not paid proper overtime at an invalid "tip credit" minimum wage. With respect to Plaintiff, a subclass of FLSA Collective Plaintiffs, and the Tipped Subclass, Defendants were not entitled to claim any tip credit allowance under IWPCA because Defendants (i) failed to properly provide tip credit notice at hiring and annually thereafter; (ii) claimed tip credit for all hours worked

despite having caused tipped employees to engage in non-tipped duties for hours exceeding twenty (20%) of the total hours worked each workweek; (iii) illegally retained tips; (iv) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period; (v) failed to provide proper notice because the overtime rates were wrong; and (vi) failed to accurately keep track of daily tips earned and maintain records thereof.

45.     Plaintiff GOMBASH was required to engage more than twenty percent (20%) of his working time in non-tipped related activities, including setting up silverware, setting up tables, folding napkins, cleaning tables, filling and combining condiments, sanitizing the bars, etc. Even though Defendants required tipped employees to engage in non-tipped activities for hours exceeding twenty percent (20%) of the total hours worked each workweek, Defendants improperly claimed tip credit for all hours worked by tipped employees.

46.     Throughout his employment with Defendants, Plaintiff GOMBASH was not compensated for all his hours worked due to Defendants' time shaving policy. Plaintiff GOMBASH was deducted a thirty (30) minute meal break, despite that fact that he did not take such break because he was too busy and asked by Defendants to perform various tasks. FLSA Collective Plaintiffs, and Class Members similarly suffered from meal break deductions when they were not free to take breaks.

47.     Throughout Plaintiff GOMBASH's employment, Defendants failed to reimburse Plaintiff for his uniform costs. Defendants required Plaintiff and his co-workers to pay twelve dollars ($12) for a shirt and ten dollars ($10) for aprons. FLSA Collective Plaintiffs and Class Members, including the Tipped Subclass, similarly did not receive reimbursements for buying their own uniforms as required by Defendants.

48.     Plaintiffs, FLSA Collective Plaintiffs, and Class Members suffered from Defendants' retention of gratuities. Defendants charged various service charges for different sized parties but tipped

employees would only get a portion of the service charges. Defendants would keep a portion of the service charges. Customers would believe that Tipped Employees kept all of the service charges.

49.     At all relevant times, Defendants failed to provide Plaintiff and Class Members with any wage and hour notices as required under IWPCA.

50.     Defendants knowingly and willfully operated their business with a policy of not providing wage and hour notice to Plaintiff and Class Members as required under IWPCA.

51.     At all relevant times, Defendants failed to provide Plaintiff and Class Members with proper wage and hour statements as required under IWPCA.

52.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under IWPCA. Defendants failed to reflect the actual number of hours worked by Plaintiff and Class Members.

53.     Plaintiff retained HR LAW COUNSEL to represent Plaintiff, FLSA Collectives Plaintiffs, and Class Members in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIMS

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT
### ON BEHALF OF PLAINTIFF AND FLSA COLLECTIVE PLAINTIFFS

54.     Plaintiff realleges and incorporates all the foregoing paragraphs as if fully set forth herein.

55.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

56.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

57.     At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.00.

58.     At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiff and FLSA Collective Plaintiffs for all hours, including overtime, due to Defendants' policy of time shaving. At all relevant times, Defendants had a policy and practice of failing to reimburse Plaintiff and FLSA Collective Plaintiffs, including the Tipped Subclass, for their uniform costs.

59.     At all relevant times, Plaintiff, a subclass of FLSA Collective Plaintiffs suffered from Defendants' retention of gratuities.

60.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

61.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

62.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

17

63.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, including overtime, due to time shaving; reimbursements for tools of the trade maintenance; damages representing disgorgement of illegally retained gratuities; plus an equal amount as liquidated damages.

## COUNT II

### VIOLATION OF THE ILLINOIS WAGE PAYMENT AND COLLECTION ACT ON BEHALF OF PLAINTIFF AND CLASS MEMBERS

64.     Plaintiff realleges and incorporates all the foregoing paragraphs as if fully set forth herein.

65.     At all relevant times, Plaintiff and Class Members were employed by the Defendants within the meaning of IWPCA 820 ILCS 115/1 and 2.

66.     Defendants were not entitled to claim any tip credits from Plaintiff and the Tipped Subclass members under IWPCA 820 ILCS 105/4.

67.     Defendants willfully violated Plaintiff's and Tipped Subclass members' rights by failing to pay them proper wages in the lawful amount for all hours worked under IWPCA 820 ILCS 140/3.1.

68.     Defendants willfully violated Plaintiff and the Class Members' rights by failing to reimburse them for their uniform costs. Defendants also deducted for an improper meal credit, in violation of IWPCA 820 ILCS 115/9.5. See also 56 Ill. Adm. Code 300.840.

69.     Defendants willfully violated Plaintiff and the Class Members' rights by illegally retaining gratuities in violation of IWPCA 820 ILCS 115/4.1.

70.     Defendants knowingly and willfully operated their business with a policy of not providing all non-exempt employees wage notice, at date of hiring and annually thereafter, as required under the IWPCA 820 ILCS 115/10.

71.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under the IWPCA 820 ILCS 115/10. Defendants are required to provide itemized listings of deductions taken on each wage statement. Defendants failed to satisfy the requirements under the IWPCA because such tip credit allowance was never clearly included in wage statements to tipped employees for each payment period. Defendants also provided fraudulent wage statements that failed to accurately reflect the proper hours and compensation owed to Plaintiff and Class Members.

72.     Due to the Defendants' Illinois Wage Payment and Collection Act violations, Plaintiff and Class Members are entitled to recover from Defendants damages for unpaid wages, including minimum wages and overtime, due to an invalid tip credit; unpaid wages, including overtime, due to time shaving; reimbursement for uniforms; illegally retrained gratuities; reasonable attorneys' fees; liquidated damages; statutory penalties; and costs and disbursements of the action, pursuant to the Act.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff on behalf of himself, FLSA Collective Plaintiffs, and Class Members, respectfully request that this Court grant the following relief:

a.     A declaratory judgment that the practices complained of herein are unlawful under the FLSA and IWPCA;

b.     An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

c.     An award of unpaid minimum and overtime wages due to Defendants' invalid tip credit policy under the IWPCA;

d.     An award of unpaid regular and overtime compensation resulting from Defendants' policy of time shaving due under the FLSA and the IWPCA;

e.   An award of unpaid wages due to Defendants' failure to reimburse tools of the trade/uniform costs under the FLSA and IWPCA;

f.   An award equal to the amount of the improperly retained tips withheld by Defendants;

g.   An award of statutory penalties as a result of Defendants' failure to comply with the IWPCA wage notice and wage statement requirements;

h.   An award of prejudgment and postjudgment interest, costs, and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

i.   Designation of Plaintiff as Representatives of the FLSA Collective Plaintiffs;

j.   Designation of this action as a class action pursuant to F.R.C.P. 23;

k.   Designation of Plaintiff as Representatives of Class; and

l.   Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated this 1st of March, 2023.

Respectfully Submitted,

By:   *Isl Ethan G. Zelizer*
Ethan G. Zelizer
HR LAW COUNSEL
29 S. Webster St., Suite 350-C
Naperville, Illinois 60540
630.551.8374
ethan@hrlawcounsel.com
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs, and the Class*

EXHIBIT A





**About WeEat Hospitality Group**

The WeEat Hospitality Group establishes and operates a family of restaurants that offer a delicious and memorable experience. The WeEat Hospitality Group provides superior business management and assistance through consultation and training in the areas of service, hospitality, culinary creations and development, finance and accounting, human resources, etc. The WeEat Hospitality Group also promotes and markets a program that rewards customers for their loyalty in supporting its family of restaurants. – less

**GIFT CARDS**



tps://www.indeed.com/?from=gnav-acme--acme-webapp



Back To WeEat Hospitality



## CLICK HERE TO
## SIGN UP NOW

## SIGN IN

Username / Email

Password

Can't access your account?

SIGN IN

Terms & Conditions    Privacy Policy    Cookie Policy

Go Back



Select Your Favorite Store

Email

First Name

Last Name

Mobile Number

Select Birthdate Month

Select Birthdate Day

Create Password

Verify Password

☑ Yes, I want to receive emails for product specials, announcements and initiatives.

☑ Yes, I want to receive SMS messages for product specials, announcements and initiatives.

☐ By signing up, you agree to rewards and application **Terms & Conditions**, **Privacy Policy** and **Cookie Policy**.

NEXT

23



## Employment Opportunities

We're always looking for talented individuals to join the Honey Berry family. Please see the available positions we currently have at each of our locations below. Thanks for your interest and we look forward to hearing from you!

**Brookfield**
Barista (2)
Cook (2)
Server (2)
Host (1)
Dishwasher (1)
Busser (1)
Expeditor (1)
Food Runner (1)

Apply Now

**Hoffman Estates**
Barista (2)
Cook (2)
Server (2)
Host (1)
Dishwasher (1)
Busser (1)
Expeditor (1)
Food Runner (1)

Apply Now

**Lombard**
Barista (2)
Cook (1)
Server (2)
Host (1)
Dishwasher (1)
Busser (1)
Expeditor (1)
Food Runner (1)

Apply Now

**South Elgin**
Barista (2)
Cook (2)
Host (1)
Dishwasher (1)
Busser (1)
Expeditor (1)
Food Runner (1)

Apply Now

**State Street**
Barista (2)
Kitchen Manager (1)
Cook (2)
Server (2)
Host (1)
Dishwasher (1)
Busser (1)
Expeditor (1)
Food Runner (1)

Apply Now

**Warrenville**
Barista (2)
Kitchen Manager (1)
Cook (1)
Server (2)
Host (1)
Dishwasher (1)
Busser (1)
Expeditor (1)
Food Runner (1)

Apply Now

**Greenfield**
Barista (2)
Cook (9)
Server (30)
Host (4)
Dishwasher (4)
Busser (4)
Expeditor (4)
Food Runner (4)

Apply Now

**West Allis**
Barista (2)
Cook (9)
Server (30)
Host (4)
Dishwasher (4)
Busser (4)
Expeditor (4)
Food Runner (4)

Apply Now

**Dallas**
Barista (2)
Cook (9)
Server (30)
Host (4)
Dishwasher (4)
Busser (4)
Expeditor (4)
Food Runner (4)

Apply Now

**Roselle**
Barista (2)
Cook (9)
Server (30)
Host (4)
Dishwasher (4)
Busser (4)
Expeditor (4)
Food Runner (4)

Apply Now

## Employment Opportunities

We're always looking for talented individuals to join the Bulldog Ale House family. Please see the available positions we currently have at each of our locations below. Thanks for your interest and we look forward to hearing from you!

**Algonquin**
Cook (1)
Server (2)
Host (1)
Dishwasher (1)
Busser (1)
Expeditor (1)
Food Runner (1)
Bartenders (2)

APPLY NOW

**Aurora**
Kitchen Manager (1)
Cook (1)
Server (2)
Host (1)
Dishwasher (1)
Busser (1)
Expeditor (1)
Food Runner (1)
Bartenders (2)

APPLY NOW

**Bolingbrook**
Kitchen Manager (1)
Cook (1)
Server (3)
Host (1)
Dishwasher (1)
Busser (1)
Expeditor (1)
Food Runner (1)
Bartenders (2)

APPLY NOW

**Carol Stream**
Cook (1)
Server (2)
Host (1)
Busser (1)
Expeditor (1)
Food Runner (1)
Bartenders (2)

APPLY NOW

**McHenry**
Server (2)
Host (1)
Dishwasher (1)
Busser (1)
Expeditor (1)
Food Runner (1)
Bartenders (2)

APPLY NOW

**New Lenox**
Cook (1)
Server (2)
Host (1)
Dishwasher (1)
Busser (1)
Expeditor (1)
Food Runner (1)
Bartenders (2)

APPLY NOW

**North Aurora**
Cook (1)
Server (2)
Host (1)
Dishwasher (1)
Busser (1)
Expeditor (1)
Food Runner (1)
Bartenders (2)

APPLY NOW

**Rodgers Park**
Cook (1)
Host (1)
Dishwasher (1)
Busser (1)
Expeditor (1)
Food Runner (1)
Bartenders (2)

APPLY NOW

**Rolling Meadows**
Kitchen Manager (2)
Cook (1)
Server (2)
Host (1)
Dishwasher (1)
Busser (1)
Expeditor (1)
Food Runner (1)
Bartenders (2)

APPLY NOW



HOME   MENU   LOCATIONS   SPECIALS   LOYALTY   GIFT CARDS   EMPLOYMENT   CONTACT

Employment | Rate Your Visit    ORDER ONLINE & SAVE 20%

HOME   LOCATIONS ▾   MENU ▾   ORDER ONLINE ▾   DAILY SPECIALS ▾   HAPPY HOUR ▾   FUNDRAISERS ▾   PERKS ▾   ABOUT ▾

ALGONQUIN
AURORA
BOLINGBROOK
CAROL STREAM
LANSING
MCHENRY
NEW LENOX
NORTH AURORA
ROGERS PARK
ROLLING MEADOWS

FIND YOUR NEAREST LOCATION

